UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| STATES OF CALIFORNIA, COLORADO, ) | |
| CONNECTICUT, DELAWARE, FLORIDA, ) | |
| GEORGIA, HAWAII, ILLINOIS, INDIANA, ) | |
| LOUISIANA, MARYLAND, ) | |
| MASSACHUSETTS, MICHIGAN, ) | |
| MINNESOTA, MONTANA, NEVADA, ) | |
| NEW HAMPSHIRE, NEW JERSEY, ) | |
| NEW MEXICO, NEW YORK, ) | |
| NORTH CAROLINA, OKLAHOMA, ) | |
| RHODE ISLAND, TENNESSEE, TEXAS, ) | |
| VIRGINIA, and WISCONSIN, and the ) | |
| DISTRICT OF COLUMBIA ex rel. ) | |
| BRIAN EBERHARD, ) | |
| ) | |
| Plaintiffs/Relators, ) | |
| ) | |
| v. ) | No.: 3:11-CV-556 |
| ) | (VARLAN/SHIRLEY) |
| ANGIODYNAMICS, INC., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

This civil action is before the Court on two motions filed by the relator in this case: 1) the Motion for Voluntary Dismissal [Doc. 20], in which the relator moves for dismissal of the case; and 2) the Motion for Permanent Sealing or, in the alternative, for Redaction [Doc. 21], in which the relator moves the Court to maintain the seal in this case or alternatively, redact his name and identifying information from the record. The United States and individual states have filed notices of consent to the dismissal [Docs. 23, 24]. The United States, however, opposes the relator's motion for maintaining the

seal in this case [Doc. 23 at 3]. For the reasons discussed herein, the relator's Motion for Voluntary Dismissal will be granted [Doc. 20], but the Motion for Permanent Sealing [Doc. 21] will be denied.

**I.     Background**

Defendant Angiodynamics, Inc. is involved in the manufacture and distribution of various medical devices regularly used by hospitals and other healthcare providers [Doc. 1 ¶ 6]. The company sells their products to doctors' offices and hospitals, which in turn bill both Medicare and state Medicaid programs [*Id.*]. The relator was employed as a sales consultant for defendant from July 2008 through March 2010, and was responsible for sales of peripheral vascular products in a region including eastern and middle Tennessee as well as parts of Virginia, North Carolina, and Kentucky [*Id.* ¶ 5].

In his sealed complaint for a violation of the False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "FCA"), relator claims that defendant engaged in various conduct that violated various provisions of that statute as well as other federal and related state laws [*Id* ¶¶ 10-11]. Specifically, relator contends that defendant and its employees used product promotions to generate business, provided free "swap out" services whereby customers could receive updated versions of devices for free, provided discount prices, and hosted dinners for potential customers [*Id*. ¶¶ 13-25]. In turn, relator alleges, the relevant doctor or hospital would fail to report these occurrences when they billed Medicare or the state equivalent for the products given to them by defendant, thereby submitting a false claim to the government [*Id.* ¶ 14]. Relator also alleges that defendant

2

promoted devices for uses unapproved by the Food and Drug Administration ("FDA"), so that doctors and hospitals also violated the False Claims Act by seeking reimbursement by the government for devices that were being used improperly [Doc. 1 ¶¶ 11, 26].

Following a period of investigation, both the United States and states declined to intervene [Docs. 19, 22]. The relator subsequently filed motions for voluntary dismissal and for the permanent sealing of the case.

## II. Analysis

As both the government entities and the relator agree that dismissal of the case is proper pursuant to 31 U.S.C. § 3730(b)(1), the only remaining issue is whether the case should remain sealed or redacted or whether it should be unsealed in its entirety.

The relator submits permanent sealing this case, or in the alternative, redacting his name, is necessary because he remains employed in the medical device industry, although not with this particular defendant, and fears economic retaliation as well as problems obtaining future employment. In addition to the possibility that defendant will contact the relator's current employer, the relator fears that defendant will also contact customers who buy products from the relator and his current employer.

The government responds that sealing or redacting this case is unnecessary and is contrary to the right of the public to have access to records of judicial proceedings. Pointing out that preventing public exposure requires a significant interest that outweighs the presumption of public access, the government argues that the perceived risk of economic harm or career damage is insufficient to serve as a basis for maintaining a seal.

3

The government similarly contends that redaction is inappropriate because at the outset the relator bore the risk that his identity would be revealed in the event that the government entered the case.

The FCA permits private citizens, known as relators, to bring suit in the name of the United States for knowingly presenting false or fraudulent claims for payment or approval to an officer or employee of the government. 31 U.S.C. § 3729(a)(1). A relator is required to serve the government with both a copy of the complaint and a written disclosure of any evidence and information possessed by the relator. 31 U.S.C. § 3730(b)(2). After being served, the government has 60 days to determine whether it will intervene and proceed as the primary party responsible for prosecuting the case, although the government may seek an extension for good cause shown. 31 U.S.C. §§ 3730(b)(2), 3730(b)(3). During the 60-day time period, and any permissible extension, the complaint remains under seal. 31 U.S.C. § 3730(b)(2).

From this background, the court in *United States ex rel. Herrera v. Bon Secours Cottage Health Servs.*, 665 F. Supp. 2d 782 (E.D. Mich. 2008), observed "there is nothing in the FCA evincing a congressional intent to impose a permanent seal over all *qui tam* suits where a relator seeks to voluntarily dismiss the action after the [g]overnment declines to intervene," *id.* at 784. The court also noted that the 60-day time period for sealing complaints "reflects Congress' desire to have the seal lifted after the government conducts its initial investigation and decides whether to intervene." *Id.* at 785 (citing *United States ex rel. Erickson v. Univ. of Wash.*, 339 F. Supp. 2d 1124, 1126

4

(W.D. Wash. 2004)). Given that the FCA only permits the government to seek an extension of the seal, rather than permitting the relator to do so, the court believed this to suggest that the seal was intended to permit the government adequate time for investigation, rather than to protect the identity of relators. *Id.* The court concluded that a permanent seal would require the relator to overcome the strong presumption in favor of public access, that "'sealing of court records is not warranted absent the presence of a factor sufficient to outweigh the strong interest in public access, such as national security considerations, trade secrets, personal privacy interests, and personal safety concerns.'" *Id.* (quoting *United States ex rel. Permison v. Superlative Techs.*, 492 F. Supp. 2d 561, 564 (E.D. Va. 2007)). It then examined the relator's reasons for wanting the case to remain permanently sealed, including the potential for economic harm and reputational damage. While the court noted that the relator's fears were not unfounded, the Court concluded that the fear of retaliation by her current or future employers was "insufficient to overcome the strong presumption in favor of access to judicial records." *Id.* at 786. *See also United States ex rel. Wenzel v. Pfizer, Inc.*, 881 F. Supp. 2d 217, 222-23 (D. Mass. 2012) (holding that relator's privacy concerns were insufficiently compelling to override presumption in favor of public access when relator "failed to provide facts establishing the likelihood of specific retaliatory actions"); *United States ex rel. Ruble v. Skidmore*, No. 2:09-CV-549, 2011 WL 5389325, at *4 (S.D. Ohio Nov. 8, 2011) (holding that relator had not demonstrated a sufficient privacy interest to overcome presumption in favor of public access even where there was evidence that her ability to practice

5

depended upon reputation in professional community); *United States ex rel. Littlewood v. King Pharm.*, 806 F. Supp. 2d 833, 842 (D. Md. 2011) (finding no basis to maintain seal when "[a]t best, the relator has expressed hypothetical concerns about possible retaliation by her employer and damage to her career prospects").

In support of his motion to maintain the seal, the relator cites to *Whistleblower 14106-10W v. Comm'r of Internal Revenue*, 137 T.C. 183 (T.C. 2011), a whistleblower rewards case where the tax court denied a claimant's motion to seal the case but granted the request for anonymity based on the potential for retaliation and potential harm to the claimant's reputation, *id.* at 206-07. As the *Whistleblower* court noted, however, actions involving anonymity in the tax context and *qui tam* suits differ in fundamental ways. Unlike the FCA, the statute giving rise to the whistleblower award in tax cases includes no provision for temporarily sealing the record and also includes no anti-retaliatory provisions. *See id.* at 200. The court also noted that granting anonymity in that case was consistent with the general administrative policies of the Office of the Whistleblower, whereas here, permanently sealing the case or redacting relator's name would go against the normal practice whereby the case is unsealed once the government decides not to intervene. The *Whistleblower* case may have addressed some of the same issues present in this case, but the case is inapposite to this *qui tam* suit as it concerned a different type of lawsuit under a different statutory scheme.

Here, the relator has not presented sufficient justification for this Court to depart from the well-grounded and strong presumption in favor of public access. While the relator asserts that there may be retaliation against him by either defendant's directly talking to his employer or his customers, he has not submitted any evidence to support this assertion. As the cited cases discuss, the mere possibility, or even plausibility, of some form of economic harm is inadequate to depart from the rule favoring public access, particularly in the absence of any concerns involving national security, trade secrets or personal safety. As the *Herrera* court noted, the relator is not without recourse should defendant retaliate in some way under the anti-retaliatory provisions of the FCA. Moreover, the fears the relator has expressed here are not that different from the risks any employee may face when suing an employer. *Herrera*, 665 F. Supp. 2d at 786. The Court concludes that permanently sealing this case is unnecessary in light of the strong presumption favoring access to public records and will deny relator's request to do so.

For the same reasons, the Court denies the relator's alternative request to have identifying information redacted from the complaint and other documents in this case. Similarly to the reasoning used by the *Herrera* and other courts, merely removing the relator's name will not assure that defendant cannot identify who the relator is, and removing all identifying information is tantamount to sealing the case. *Id.* Relator has not presented adequate justification to warrant redacting his name from the record.

### III. Conclusion

In light of the consent notices entered on behalf of the United States and the individual states [Docs. 23, 24], relator's motion for voluntary dismissal [Doc. 20] will be **GRANTED**, the claims against defendant **DISMISSED**, and this case will be **CLOSED**. For the reasons previously discussed, however, relator's motion to seal the case or redact the complaint [Doc. 21] will be **DENIED** and, accordingly, this case will be **UNSEALED** in its entirety.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE